## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| MONICA FORE, individually and next best friend of KRISTON ERVIN her son,<br>        Plaintiffs,<br><br>        v.<br>CONNECTICUT LIGHT & POWER, et al.,<br>        Defendants. | No. 3:13-cv-00822 (JAM) |

## RULING GRANTING MOTIONS TO DISMISS
## AND DENYING REMAINING MOTIONS AS MOOT

In early June 2013, the electric company cut off power to plaintiff Monica Fore's apartment in West Hartford, Connecticut, allegedly because of a large and overdue bill. Several days later, plaintiff filed a sweepingly broad *pro se* complaint against the electric company and many more defendants alleging a vast conspiracy to violate her federal constitutional and statutory rights. In her amended complaint, plaintiff has named two dozen defendants including the electric company and several of its employees, the West Hartford police department and two of its officers, the Community Health Center of New Britain and two of its doctors, the State of Connecticut's Public Utilities Regulatory Authority and two of its employees, the Town of Bristol, Connecticut and several of its officials, a prior landlord, and a lawyer and his law firm that was associated with a prior eviction action against her.

Now pending are multiple motions to dismiss by the defendants. Because I conclude that plaintiff has not plausibly alleged grounds for relief against any of the defendants, I will grant the motions to dismiss, deny all remaining motions as moot, and dismiss this action in its entirety.

### BACKGROUND

The following facts are drawn from plaintiff's amended complaint. Doc. #14. On June 4, 2013, two West Hartford police officers, Shawn DiBella and Raymond Narcisco, and an

unnamed technician for Connecticut Light & Power (CL&P) arrived at plaintiff's apartment and told her that they were there to shut off her electricity. Plaintiff lived in a third-floor apartment of what she describes as a three-story commercial building. According to CL&P, plaintiff had an unpaid electric bill of $10,975.

Plaintiff protested that her service could not be lawfully terminated because her son was disabled and relied on electric service for his medical needs.[1] Her son has autism, asthma, and is obese and needs electricity for therapeutic services to run his computers and related devices. Doc. #14 at 10. "The music [from her son's electric piano], computer, X-Box and other things, including treadmill is not for pleasure. They are [her son's] medical equipment," and "[t]he electric piano, computer, X-Box, air conditioner, tutors, and music are the most important thing to keep him from having asthma attacks, high blood pressure and anxiety attacks." *Id.* at 10, 11.

Officer DiBella said he would call an ambulance if needed for her son but that he was giving permission to the CL&P employee to turn off the power. The CL&P technician then went down the back stairs to have the electricity turned off.

Plaintiff promptly went to the West Hartford Police Department to complain and then went to the Community Health Center of New Britain. While there, plaintiff asked to speak to a doctor, but was told none were available. She then requested a copy of her son's CL&P medical certification form that a doctor had previously filled out. Plaintiff alleges that the form she received is fraudulent. Plaintiff claims that doctors of the Community Health Center of New Britain conspired with defendant Nora Benson, an employee of CL&P, and others to shut off

---

[1] Connecticut state law prevents a utility company from terminating service to a household "during such time as any resident therein is seriously ill or in a life threatening situation, as certified to the utility company by a registered physician." *See* C.G.S.A. § 16-262d; *Regs. Conn. State Agencies* § 16–3–100(b)(3)(c); *O'Reilly v. Connecticut Light & Power Co.*, 2009 WL 248428, at *1 (D. Conn. Feb. 2, 2009).

[2] Although the complaint does not further describe conduct by these attorneys and law firm, the Court takes judicial notice of prior state court litigation involving these parties. See *PWH, LLP v. Fore*, (Conn. Super. 2013) (summary

plaintiff's electricity. Plaintiff states that after speaking to Benson of CL&P, the defendant doctors falsified plaintiff's son's medical records. "At no time did Dr. Williams and Dr. Knoechel investigate [her son's] medical history before telling CL&P he wasn't disabled enough to have the electricity on." Doc. #14 at 11.

Plaintiff also claims that whenever she submitted her son's medical certification form to CL&P, the form was denied by defendant CL&P employees Benson and Tracey Kelsey. According to plaintiff, Benson and Kelsey told her that the medical certification form was not filled out correctly and that "the form still wasn't good enough." Doc. #14 at 6-7. Additionally, these defendants would not accept other forms or medical records evidencing plaintiff's son's disabilities. These denials resulted in plaintiff not being on CL&P's medical protection plan list, and she was therefore vulnerable to a service termination for an unpaid bill, as had just occurred.

In an attempt to get her electricity restored, plaintiff "filed a motion for public accommodation" with defendant Connecticut Department of Energy & Environmental Protection Public Utilities Regulatory Authority (PURA). Doc. #14 at 7. This request was refused by defendants Alan Bouchard and Miriam Theroux at PURA as well as by CL&P defendants Benson and Kelsey. Plaintiff then made numerous complaints to the West Hartford police, the West Hartford mayor's office, the city's corporation counsel, the United States Attorney's Office in Connecticut, and the United States Department of Justice.

Plaintiff alleges that the roots of her billing dispute with CL&P stem from fraud and racketeering conduct engaged in by various officials from the Town of Bristol in Connecticut, where she used to live on some unspecified dates prior to living in West Hartford. She alleges that she was overbilled by CL&P while living in Bristol and that Bristol officials were aware of this and other racially discriminatory policies of the Bristol police department. The responsible

officials included defendants Guy Morin (the code enforcement officer), John DiVenere (the chief of police), Thomas Lavigne (the housing officer), and Mark Moscowitz (a police lieutenant). "At no time did any government official correct the matter. Instead, whenever the plaintiff tried to protect her family and other innocent people, she and her children were threatened and abused." Doc. #14 at 8.

Additionally, plaintiff alleges that "the sudden shut off of the Plaintiff's electricity with CL & P is in relation [for] the Plaintiff winn[ing] her case in Court against PWH LLP [her former landlord] and in regards to Ronald Webber, Robert Koff, Attorney Steven Katz and Rome Clifford Katz & Koerner LLP." *Ibid*. Plaintiff alleges that "[i]n the case with PWH LLP, the Plaintiff was the defendant and clearly informed [several named judges] of the fraudulent utility bills, leases, premises, eviction cases, n***** free campaign and a wealth of other fraudulent activities which included landlords hiding under artificial names and defrauding tenants." *Id.* at 9 (asterisks added for explicit term).[2]

Plaintiff's amended complaint names 24 defendants who, for ease of reference, may be classified as falling into the following six groups of defendants:

- the West Hartford police defendants (West Hartford Police Department, Shawn DiBella, Raymond Narcisco);

- the CL&P defendants (CL&P, Nora Benson, Tracy Kelsey, Joaquina Borges King, William Herdegen III);

- the Community Health Center of New Britain defendants (Community Health Center of New Britain, Rachel Williams, Sarah Knoechel);

- the Bristol defendants (City of Bristol, John DiVenere, Guy Morin, Thomas Lavigne, Mark Moskowitz);

---

[2] Although the complaint does not further describe conduct by these attorneys and law firm, the Court takes judicial notice of prior state court litigation involving these parties. See *PWH, LLP v. Fore*, (Conn. Super. 2013) (summary process eviction claim by PWH against plaintiff); *Fore v. Webber*, 2012 WL 3264036 (Conn. Super. 2012) (lawsuit by plaintiff against Webber, PWH, Katz and law firm relating to her lease).

- the State defendants (PURA, Alan Bouchard, and Miriam Theroux); and

- the Landlord, Lawyer, and Law Firm Defendants (PWH LLP, Ronald Webber, Robert Koff, Steven Katz, and Rome Clifford Katz & Koerner LLP).

The amended complaint asserts the following 17 claims: criminal conspiracy, 18 U.S.C. § 371 (Claim I); criminal civil rights conspiracy, 18 U.S.C. § 241 (Claim II); deprivation of rights under color of law, 18 U.S.C. § 242 (Claim III); violation of federally protected activities, 18 U.S.C. § 245 (Claim IV); violation of equal civil status, 42 U.S.C. § 1981 (Claim V); deprivation of rights under color of law, 42 U.S.C. § 1983 (Claim VI); conspiracy to interfere with civil rights, 42 U.S.C. § 1985 (Claim VII); action for neglect to prevent conspiracy, 42 U.S.C. § 1986 (Claim VIII); violation of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961-1968 (Claim IX); torture arising under the Eighth Amendment (Claim X); violation of the Americans with Disabilities Act and the Rehabilitation Act of 1973 (Claim XI); accessory-after-the-fact, 18 U.S.C. § 3 (Claim XII); violations of oath arising under the United States Constitution, Article VI (Claim XIII); violations of the First, Fifth, Seventh, and Fourteenth Amendments of the United States Constitution First Amendment (Claim XIV); violation of the Due Process and Equal Protection Clauses (Claim XV); recovery of attorney's fees 42 U.S.C. § 1988 (Claim XVI); and retaliation "against the Plaintiff and her family for exposing the housing fraud, racial profiling and n***** free campaign in Bristol and the discrimination at Tunxis State Community College" (Claim XVII).[3]

Plaintiff seeks an award of $10 million in damages. Among other items of relief, she also seeks "remov[al] of electricity debt and other debts attributable to the fraud and housing scams,"

---

[3] Plaintiff's amended complaint (Doc. #14) skips from page 15 to page 17, accounting for the jump from Claim XII to Claim XVI. The Court will assume for the purpose of the amended complaint that Claims XIII-XV from the complaint (Doc. #1) are also asserted.

as well as "credit repair," "student loan forgiveness," and "erasure of public records injurious to the Plaintiff and her children." Doc. #14 at 17.

DISCUSSION

The background principles governing a Rule 12(b)(1) or Rule 12(b)(6) motion to dismiss are well established. The Court must accept as true all factual matters alleged in a complaint, although a complaint may not survive unless its factual recitations state a claim to relief that is plausible on its face. *See, e.g., Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Mastafa v. Chevron Corp.,* 770 F.3d 170, 177 (2d Cir. 2014) (same). Moreover, "'[a]lthough a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice'" to survive a motion to dismiss. *Id.* (quoting *Harris v. Mills,* 572 F.3d 66, 72 (2d Cir. 2009)); *see also Krys v. Pigott,* 749 F.3d 117, 128 (2d Cir. 2014) (noting that court is "not bound to accept as true a legal conclusion couched as a factual conclusion" or "to accept as true allegations that are wholly conclusory") (citations and internal quotation marks omitted).

To be sure, "[p]ro se complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of Am.,* 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 474 (2d Cir. 2006)). Still, even a *pro se* complaint must plead enough facts to state a plausible claim for relief. "We have noted our obligation to construe pro se complaints liberally, even as we examine such complaints for factual allegations sufficient to meet the plausibility requirement." *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011). In short, my role in reviewing the motion to dismiss is to determine

whether the complaint—apart from any of its conclusory allegations and construing its *pro se* allegations liberally—sets forth sufficient facts to state a plausible claim for relief.

### Claims on Behalf of Plaintiff's Son

Plaintiff has brought the instant action on her own behalf as well of that of her adult son as "Next Best Friend." Doc. #14. Plaintiff, however, may not bring a lawsuit on behalf of her son, because a *pro se* litigant may represent herself but may not represent third parties. *See Lattanzio v. COMTA*, 481 F.3d 137, 139 (2d Cir. 2007) (*per curiam*); 28 U.S.C. § 1654. This prohibition extends to non-lawyer parents who seek to represent their children. *See Tindall v. Poultney High Sch. Dist.*, 414 F.3d 281, 284–85 (2d Cir. 2005) (noting the "well-established general rule in this Circuit that a parent not admitted to the bar cannot bring an action *pro se* in federal court on behalf of his or her child"); *see also KLA v. Windham Se. Supervisory Union*, 348 F. App'x 604, 605-06 (2d Cir. 2009) (non-lawyer parents barred from representing their incompetent daughter). For these reasons, plaintiff's claims insofar as asserted on behalf of her son are dismissed.

### Claims Based on Violations of Criminal Statutes

Several of plaintiff's claims rely on federal criminal statutes. It is well established that—absent specific language to the contrary—criminal statutes do not give rise to a civil cause of action. *See Republic of Iraq v. ABB AG*, 768 F.3d 145, 170 (2d Cir. 2014); *see also Luckett v. Bure*, 290 F.3d 493 (2d Cir. 2002) ("We affirm the district court's dismissal of Luckett's claims of sabotage, forgery, and perjury, which are crimes and therefore do not give rise to civil causes of action."); *Delarosa v. Serita*, 2014 WL 1672557, at *2 (E.D.N.Y. 2014) (no right of action under 18 U.S.C. § 241 or § 242); *Hom v. Brennan*, 840 F. Supp. 2d 576, 582 (E.D.N.Y. 2011) (no right of action under 18 U.S.C. § 371); *Massad v. Greaves*, 554 F.Supp.2d 163, 167 (D.

Conn. 2008) (no right of action under 18 U.S.C. § 4). Accordingly, the Court will dismiss five of plaintiff's claims (Claims I-IV and XII) that are predicated on the alleged violation of criminal statutes.

### *Eighth Amendment Torture Claim*

Plaintiff cites the Eighth Amendment and its prohibitions against cruel and unusual punishment in her civil cause of action. The Eighth Amendment's protection against cruel and unusual punishment does not apply until after a person has been subject to criminal conviction and sentence. *See Ingraham v. Wright,* 430 U.S. 651, 666–68 (1971); *United States v. Walsh*, 194 F.3d 37, 48 (2d Cir. 1999). Here, because plaintiff has not alleged that she was convicted of a crime, she does not have any claim arising from the Eighth Amendment. Accordingly, the Court will dismiss plaintiff's Eighth Amendment claim.

### *Disability and Rehabilitation Act Claims*

The complaint does not state plausible grounds for relief under Title II of the Americans with Disabilities Act (ADA) or the Rehabilitation Act. Title II of the ADA provides in relevant part that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

Essentially the same standards govern consideration of claims under Title II of the ADA and Section 504 of the Rehabilitation Act. *See Henrietta D. v. Bloomberg,* 331 F.3d 261, 272 (2d Cir. 2003). To establish a violation of either statute, plaintiff must demonstrate that she is a (1) qualified individual with a disability; (2) that she was excluded from participation in a public entity's services, program or activities or was otherwise discriminated against by a public entity;

and (3) that such exclusion or discrimination was due to her disability. *See Fulton v. Goord*, 591 F.3d 37, 43 (2d Cir. 2009).

Here, plaintiff's claim cannot succeed because she does not allege that she herself was disabled, and—as discussed above—she may not litigate claims on behalf of her son. Even assuming that plaintiff could pursue a disability claim on her son's behalf, no plausible grounds exist to conclude that plaintiff or her son were subject to exclusion or discrimination by a public entity on the basis of disability. Defendant CL&P is a private company that is not subject to liability as a public entity. *See McCracken v. Portland Gen. Elec.*, 2011 WL 4036158, at *6 (D. Or. 2011) (electric company not subject to ADA), *report and recommendation adopted*, 2011 WL 4043585 (D. Or. 2011); *see also Green v. City of New York*, 465 F.3d 65, 78 (2d Cir. 2006) (private hospital not a public entity subject to suit under Title II of ADA). Nor does PURA face liability under Title II of the ADA on account of its role as a regulator of CL&P. *See Noel v. New York City Taxi & Limousine Comm'n*, 687 F.3d 63 (2d Cir. 2012) (New York City Taxi and Limousine Commission did not violate the ADA by regulating a private taxi industry that failed to afford meaningful access to passengers with disabilities); *Reeves v. Queen City Transp.*, 10 F. Supp. 2d 1181 (D. Colo. 1998) (state public utility commission's issuance of certificate of public necessity and convenience to a private company did not violate Title II of the ADA even if private company subsequently engaged in unlawful discrimination). Accordingly, the Court will dismiss plaintiff's claims under the ADA and the Rehabilitation Act.

### *Racial Discrimination and Conspiracy Claims*

The complaint does not state plausible grounds for relief for plaintiff's claim of racial discrimination under any of the civil rights statutes that she cites. *See* 42 U.S.C. §§ 1981, 1983, 1985, 1986. Although the complaint alleges in part that "defendants' conspiratorial agreement

denied the Plaintiff equal rights under the law because she was a Black woman," the complaint is devoid of any factual allegation to show that any adverse treatment was motivated by plaintiff's race. Despite plaintiff's claim of a "n***** free campaign" by police in Bristol, she has not alleged any supporting facts. A plaintiff claiming racial discrimination "must do more than recite conclusory assertions" but "must specifically allege the events claimed to constitute intentional discrimination as well as circumstances giving rise to a plausible inference of racially discriminatory intent." *Yusuf v. Vassar Coll.*, 35 F.3d 709, 713 (2d Cir. 1994); *see also id.* at 714 (further noting that plaintiff "has offered no reason to suspect that his being found guilty of sexual harassment had anything to do with his race, other than his assertion that the panel members were white and that he is Bengali"); *Gregory v. Daly*, 243 F.3d 687, 692 (2d Cir. 2001) (same).

Nor does it suffice that plaintiff accuses defendants of engaging in a massive conspiracy. As the Second Circuit has noted, "complaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct." *Ciambriello v. County of Nassau*, 292 F.3d 307, 325 (2d Cir. 2002) (affirming dismissal of inadequate claim of § 1983 conspiracy). Moreover, plaintiff's constitutional claims against non-state actor defendants (such as employees of CL&P, employees of the Community Health Center of New Britain, and lawyers and a law firm) cannot be sustained for lack of adequate allegation that any of them conspired with or willfully joined in the constitutional misconduct of any state actor. *See, e.g., Betts v. Shearman*, 751 F.3d 78, 84 (2d Cir. 2014). Accordingly, the Court will dismiss plaintiff's civil rights and related constitutional claims of discrimination.

### RICO Claim

The complaint does not state a plausible RICO claim. "To establish a civil RICO claim, a plaintiff must allege (1) conduct, (2) of an enterprise, (3) through a pattern (4) of racketeering activity," as well as "injury to business or property as a result of the RICO violation." *Lundy v. Catholic Health Sys. of Long Island Inc.,* 711 F.3d 106, 119 (2d Cir. 2013) (internal quotations and citation omitted). Moreover, "[t]he pattern of racketeering activity must consist of two or more predicate acts of racketeering." *Id.* (citing 18 U.S.C. § 1961(5)).

Here, the complaint does not purport to allege the requisite RICO predicates. Instead, it alleges that "[t]he Culpable Defendant conspired with others to commit fraud and extortion on the Plaintiff, her family, and the public at large to collect unlawful debts which affected interstate and foreign commerce via mail and wire fraud." Doc. #14 at 15. It does not identify the "Culpable Defendant." It does not describe any factual basis to conclude that her debt to CL&P was unlawful. And it does not identify any predicate acts of mail or wire fraud. The complaint does not set forth the requisite allegations for a RICO claim and does not allege facts that remotely cross the line from wild speculation to the point of plausibility sufficient to withstand a motion to dismiss.

### Claims Against West Hartford Police and Related Defendants

Plaintiff's claims against the West Hartford Police Department must be dismissed because the police department is not an entity that is subject to suit. *See, e.g., Rivera v. Foley,* 2015 WL 1296258, at *4 (D. Conn. 2015); *Collins v. West Hartford Police Dept.*, 380 F. Supp. 2d 83, 92 n.4 (D. Conn. 2005). Nor is there any plausible merit to her claims against officers DiBella and Narcisco stemming from their encounter with plaintiff at her apartment on June 4, 2013. Despite plaintiff's allegation that the officers unlawfully entered the locked apartment

building to address plaintiff at her apartment on the third floor (Doc. #14 at 5), this complaint ignores that an apartment dweller does not have a Fourth Amendment expectation of privacy in the common areas of an apartment building. *See, e.g., United States v. Fields*, 113 F.3d 313, 321 (2d Cir. 1997).[4] Even assuming that Officer DiBella instructed the CL&P technician to go down the back stairs of the apartment building to disconnect plaintiff's electricity (Doc. #14 at 5), this does not show an unconsented intrusion on any area of plaintiff's third-floor apartment in which plaintiff had a constitutionally protected expectation of privacy or property interest. Accordingly, all claims against the West Hartford police defendants will be dismissed.

### *Claims Against CL&P Defendants*

Plaintiff has not alleged plausible grounds for relief against any of the CL&P defendants. To begin with, two of the named CL&P defendants (Herdegan and King) are simply named as defendants but are not the subject of any factual allegations of misconduct in the complaint. Liability for a constitutional violation may be imposed only on individuals who are personally involved in alleged deprivations of constitutional rights. *See, e.g., Raspardo v. Carlone*, 770 F.3d 97, 122 (2d Cir. 2014). As to the remaining CL&P defendants, CL&P is a private company, and none of CL&P's employees are state actors who may be subject to liability for any of the constitutional violations that comprise the bulk of plaintiff's complaint. *See, e.g., Betts*, 751 F.3d at 84.

Plaintiff's complaint does not allege plausible grounds to conclude that there was a conspiracy between state actors and non-state actors to violate her constitutional rights. "A

---

[4] Plaintiff has otherwise filed a motion in this case stating that she lived in Unit #24 on the third floor of the apartment building in West Hartford. Doc. #99 at 3. Although the West Hartford police defendants have submitted incident reports reflecting that neither they nor the CL&P technician entered plaintiff's apartment (Doc. #103-2 at 2-3), I do not consider these reports at the motion-to-dismiss stage of this case. The allegations of plaintiff's own complaint are clear that neither the police nor the CL&P technician entered her apartment but only common areas of the apartment building.

merely conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a § 1983 claim against the private entity." *Ciambrello*, 292 F.3d at 324. More generally still, "complaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct." *Id.* at 325 (internal quotation marks and citation omitted).

The complaint alleges that after speaking to defendant CL&P employee Benson, defendant doctors Williams and Knoechel altered Mr. Ervin's medical records "[i]n order to get away with shutting off the Plaintiff's electricity." Doc. #14 at 9.  Plaintiff alleges that "on numerous occasions certain government officials conspired with private individuals to obstruct justice in states and federal investigation to cover up the misconduct." Doc. #14 at 11. The complaint contains many similar allegations concerning an overarching conspiracy to harm plaintiff but is devoid of facts that would plausibly sustain the sweeping supposition that any non-state actors conspired with or joined state actors in the deprivation of plaintiff's constitutional rights. Accordingly, all claims against the CL&P defendants will be dismissed.

### *Claims Against Community Health Center of New Britain Defendants*

Plaintiff's constitutional claims against the Community Health Center of New Britain and two of its doctors do not plausibly set forth claims for relief. As with the CL&P defendants, the health center defendants are not state actors. Even assuming that the health center defendants acted unreasonably or fraudulently with respect to issuing a medical certificate that would have forestalled CL&P from terminating plaintiff's electrical service, this conduct does not suffice to establish plausible grounds for relief for any of the federal claims asserted by plaintiff in this action. Accordingly, all claims against the Community Health Center of New Britain defendants

will be dismissed.

### *Claims Against State Defendants*

The complaint does not plausibly allege any culpable conduct by PURA or by its employees (Alan Bouchard and Miriam Theroux). The sum total of the allegations against these defendants is that "[t]he Plaintiff filed a motion for public accommodation of which was suggested by the ADA agency," and that "[t]he State of Connecticut Public Utilities Regulatory Authority employees Alan Bouchard and Miriam Thedoux [sic] refused to accept the request as well as Ms. Nora Benson and Tracey Kelsey of CL&P." Doc. #14 at 7. Without more, these allegations alone do not give rise to any plausible inference that PURA or its employees violated plaintiff's rights.

In any event, plaintiff's claims against PURA are foreclosed by the Eleventh Amendment, which bars claims in federal court against a state agency without its consent. *See, e.g., Sossamon v. Texas*, 131 S.Ct. 1651, 1657–58 (2011). This immunity "extends beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of a state." *Mary Jo C. v. N.Y. State & Local Ret. Sys.*, 707 F.3d 144, 152–53 (2d Cir. 2013). Plaintiff has not established any grounds to believe that the State has waived its Eleventh Amendment immunity or that any exception under *Ex Parte Young* applies to this lawsuit. *See, e.g., Va. Office for Prot. & Advocacy v. Stewart*, 131 S.Ct. 1632, 1638 (2011) (citing *Ex parte Young*, 209 U.S. 123 (1908)). Accordingly, the claims against the state defendants will be dismissed.

### *Claims Against Bristol Defendants*

Plaintiff's claims against the Bristol defendants all fail for lack of any plausibly culpable connection to the wrongs alleged in her complaint arising from the termination of electrical service to her apartment in West Hartford. Although plaintiff claims that "[t]he $10,975.00

electric bill stemmed from the issues in Bristol and was placed on the Plaintiff's electric bill" for her residence in West Hartford (Doc. #14 at 8), this factual connection does not suggest any responsibility on the part of any of the Bristol defendants for the cut-off of electric service that is the subject of plaintiff's complaint. Moreover, to the extent that the complaint advances other allegations about the City of Bristol and its officials, the complaint is devoid of dates or specifics about conduct by any of the named Bristol defendants that caused harm to plaintiff. Accordingly, all claims against the named Bristol defendants will be dismissed.

### Claims Against Landlord, Lawyer, and Lawfirm Defendants

As to the landlord, lawyer, and law firm defendants, the complaint alleges only that "[t]he sudden shut off of the Plaintiff's electricity with CL & P is in retaliation to the Plaintiff winning her case in Court against PWH LLP and in regards to Ronald Webber, Robert Koff, Attorney Steven Katz and Rome Clifford Katz & Koerner LLP." Doc. #14 at 8. The complaint elsewhere alleges that plaintiff's former landlords (Webber and Koff) "lost their eviction case against the Plaintiff and are seeking to go another way to have the Plaintiff's family evicted." Doc. #14 at 12. Even accepting this allegation to be true, it does not allege that any of these persons did anything wrong, only that they had a retaliatory motive or were a reason for retaliation against plaintiff by other defendants in this case. No facts alleged plausibly suggest that any of these actors had anything to do with the termination of electrical service to plaintiff's apartment in West Hartford. Accordingly, all of the claims against the landlord, lawyer, and law firm defendants will be dismissed.

## CONCLUSION

All defendants' motions to dismiss (Docs. #66, #70, #71, #74, #96, #103, and #126) are GRANTED. Despite the fact that the Community Health Center of New Britain defendants have

not filed a motion to dismiss, the Court exercises its authority to dismiss the claims against them *sua sponte* on the ground that these claims fail to state a claim for relief. *See* 28 U.S.C. § 1915(e)(2)(B)(2).

The Court otherwise DENIES all remaining motions as moot in light of the Court's dismissal of this case. *See* Doc. #62 (plaintiff's motion re spoliation of evidence); Doc. #97 (plaintiff's motion re deprivation of rights); Doc. #99 (plaintiff's motion re use of state judges to intimidate and threaten); Doc. #105 (defendants' motion to defer responses to plaintiff's filings); Doc. #133 (plaintiff's motion for fraud on the court); Doc. #136 (defendant's motion for joinder re objection to plaintiff's motion for fraud on the court).

It is so ordered.

Dated at New Haven this 29th day of September 2015.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge